DOMENGEAUX, Judge.
This tort case, tried before a jury, was filed by Jerome C. Benson for injuries he received on January 4, 1979, while riding as a guest passenger in a truck being driven by one of the defendants, Howard Warren Seagraves. Other defendants named in the action included Jefferson Davis Electrical Cooperative (hereafter referred to as Jeff Davis), who was Seagraves’ employer, and United States Fidelity & Guaranty Company, Jeff Davis’ liability insurer. The defendants subsequently brought a third party action against the Department of Transportation and Development of the State of Louisiana, as well as against its liability insurer, Travelers Insurance Company.[1] Also intervening in the action was Commercial Union Insurance Company, the worker’s compensation insurer for Barbay Engineers, plaintiff’s employer, for recovery of the payments made to plaintiff Benson under its policy with Barbay.
The jury returned a special verdict in favor of Jerome Benson, finding that he had suffered damages in the amount of $125,000.00. The court pursuant to the verdict, thereafter rendered judgment against all the defendants insólido, and in favor of Benson in the amount of $82,450.72, with legal interest, as well as in favor of Commercial Union Insurance Company in the amount of $42,459.21 with legal interest thereon.[2] Commercial Union was also relieved of the obligation of paying weekly compensation benefits and any further claims for medical expenses to Benson.
Plaintiff Benson has appealed the jury award, claiming that it is inadequate and an abuse of the jury’s discretion in light of the magnitude of the injuries suffered by him. Defendants have answered the appeal, alleging that plaintiff should be denied damages in tort and that his sole avenue of recovery should be in worker’s compensation, on the theory that Jeff Davis was the statutory employer of Benson.
*997 Our review of the record leads us to conclude that the jury was in error in holding that Jeff Davis was not the statutory employer of Jerome C. Benson. Therefore, we reverse.
At the time of the accident, Jerome C. Benson was employed as an electrical engineer at Barbay Engineers, with whom he had been employed since 1973. Barbay Engineers is involved in the planning and design of electrical facilities, and was often hired by Jeff Davis to perform professional engineering services. Benson was specifically involved in the design of electrical substations for clients of Barbay.
Jeff Davis is one of thirteen rural electric cooperatives in the state of Louisiana. Its charter provides that it is organized pursuant to the provisions of La.R.S. 12:401, et seq. La.R.S. 12:401, in particular, authorizes the organization of such cooperatives “... for the purpose of supplying electrical energy and promoting and extending the use thereof.” . La.R.S. 12:403 specifically delineates the powers that such electrical Co-ops have, including the power to:
“(4) Generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and distribute, sell, supply, and dispose of electric energy to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per centum of the number of its members;”
* * * * * *
“(8) Construct, purchase, take, receive, lease as lessee, or otherwise acquire, and own, hold, use, equip, maintain, and operate, and sell, assign, transfer, convey, exchange, lease or lessor, mortgage, pledge, or otherwise dispose of or encumber, electric transmission and distribution lines or systems, electric generating plants, electric refrigeration plants, lands, buildings, structures, dams, plants and equipment, and any and all kinds of classes of real or personal property whatsoever, which shall be deemed necessary, convenient or appropriate to accomplish the purpose for which the cooperative is organized;”
In order for Jeff Davis to carry out these powers, it must often call on Barbay Engineers to perform engineering work that is either too complex or too time-consuming for Jeff Davis engineers to handle. Therefore, pursuant to a contract dated August 1, 1977, between Barbay and Jeff Davis, Bar-bay agreed to perform such engineering services for Jeff Davis.
One of Jeff Davis’ customers, Seacoast Products, Inc., of Cameron, Louisiana, sought to make changes at their plant which would have required modification of their existing electrical facilities. Thus, on October 31, 1978, Benson went to Cameron with Mr. Howard Seagraves and Mr. Jim DeCordova of Jeff Davis in order to survey the situation at Seacoast and develop recommendations. In a letter dated November 30, 1978, Benson advised Jeff Davis that it would be necessary to design and construct a new service substation adjacent to the existing facility at Seacoast. Subsequently, Benson prepared a design for the new facility and sent the layout to Jeff Davis.
However, Jeff Davis stipulated that Seacoast was to bear the cost of the new construction, and thereafter Seacoast indicated that they might not need to build an entirely new substation. Jeff Davis sought to make another determination of the modifications that would be necessary at Seacoast, so on January 4, 1979, it sent Seagraves from Baton Rouge to meet Jerome Benson in Jennings, Louisiana, so that they could travel together to Cameron to inspect the facility once again.
Benson and Seagraves rode to Cameron in a Jeff Davis truck. When they reached Seacoast they could find no one present at the plant with authority to discuss the modifications. Thus, the trip was essentially a wasted effort, and the two men left shortly thereafter.
On the return trip, the Jeff Davis truck suddenly crashed into the rear of a large flatbed trailer/truck. Seagraves was driving the truck at the time of the accident, and Benson was a passenger. Seagraves’ negligence was stipulated by both sides in the trial court, thus removing the cause of *998 the accident from being an issue at the trial.
Benson suffered severe injuries in the accident, including the loss of an eye, facial disfigurement, a broken ankle, and other related problems. During the period of time between the accident on January 4, 1979, and the time Benson returned to work in April of 1979, Benson allegedly lost $5,000.00 in wages and incurred approximately $19,407.00 worth of medical expenses. Benson testified that all of his medical expenses had been paid by Commercial Union, the worker’s compensation insurance carrier for Barbay. He also testified that he had been receiving weekly worker’s compensation checks from Commercial Union ever since the accident. Furthermore, at the time of the trial, Benson was earning $31,500.00 a year with Barbay Engineers, representing an increase in salary since returning to his former job following his recuperation period.
Three issues were raised for our consideration on appeal. The first concerns whether or not Jeff Davis was the statutory employer of Jerome Benson, such that Benson was limited to recovery solely in worker’s compensation rather than in tort. The second involves whether the jury award of $125,000.00 to Jerome Benson constituted an abuse of discretion. The final issue deals with whether or not Jerome Benson’s alleged failure to wear a seat belt at the time of the accident constituted contributory negligence on his part.
Because we have determined that Jeff Davis was indeed the statutory employer of Jerome Benson, and that Benson was thereby limited to recovery in worker’s compensation rather than in tort, we find it unnecessary to consider the other issues. La.R.S. 23:1061 provides the criteria for determining whether or not a principal is a statutory employer:
“Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him;”
If Jeff Davis is found to be a principal within the purview of this section, then the provisions of La.R.S. 23:1032 would be applicable:
“The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word ‘principal’ shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.”
The defendants-appellees argue that Jeff Davis was the statutory employer of Jerome Benson because Jeff Davis was authorized by charter and statute to construct, maintain, and operate an electrical utility system. They specifically cite as authority Gray v. Louisiana Power and Light Company, 247 So.2d 137 (La.App. 4th Cir.1971), writ denied, 259 La. 59, 249 So.2d 202 (1971). In that case, the plaintiff was injured while his company was constructing foundations for towers to be used by Louisiana Power and Light Company to stretch electrical transmission lines across the Mississippi River. The court in this case stated:
*999 “The LP & L Company is specifically authorized by its charter to use, manufacture and produce not only electricity but the means to transmit it to its users. The fact that it may not choose to exercise the right to build any or all of its own facilities in transmitting the electricity, as these towers and foundations, but rather contract with another will not exempt them from the provisions of LSA-R.S. 23:1061.”
The court ultimately held that the plaintiff’s sole remedy was in worker’s compensation rather than in tort. See also Messer v. Bagwell Coatings, Inc., 283 So.2d 279 (La.App. 1st Cir.1973).
This Circuit had an opportunity to comment on Gray in the case of Dupleehin v. Pittsburgh Plate Glass Company, 265 So.2d 787 (La.App. 3rd Cir.1972). In that case, the Court stated:
“We feel that while it may be inferred from the Gray case, supra, that an important factor in determining what the trade, business or occupation of a corporation is, is whether particular work is specifically authorized by the charter of the corporation, that case did not abolish the traditional requirement that the work being done should be a part of the regular trade, business or occupation of the corporation in order for LSA-R.S. 23:1061 to apply. In fact, the court in that case specifically found that the work being done was ‘an integral and a necessary part of the regular trade, business or occupation’ of the corporation which contracted for the work.”
The Dupleehin court also drew a distinction between ordinary maintenance and repairs of existing facilities and construction of a new facility or complete reconstruction of an existing facility, holding that only in the former case could the plaintiff be limited to recovery solely in compensation. They applied this test and determined that the plaintiff could recover in tort since the defendant was engaged in new construction.
However, we find that an application of the rule of Dupleehin warrants a different result when applied to the facts of this case. Initially, it should be noted that the facts in Dupleehin are distinguishable from the facts before us now. In Dupleehin the defendant was a plate glass company whose regular business operations could in no way be stretched or construed to include the construction of electrical generating facilities. However, in the case at hand, the design and construction of electrical substations by Jeff Davis was an essential and crucial part of their ordinary business of transmitting electricity. Because of this distinction, we find it inappropriate to apply the ordinary maintenance/new construction dichotomy to the facts presently under consideration.
In order to determine whether or not Benson’s activities were a part of “the regular trade, business, or occupation” of Jeff Davis, we find that the two tests cited in Moses v. Vulcan Materials Company, 388 So.2d 117 (La.App. 1st Cir.1980), writ denied, 392 So.2d 1058 (La.1980), determinative:
“(1) Whether the work which the employee is performing is part of the trade, business or occupation of the principal and is a necessary or an essential part of the principal’s business, and/or (2) whether the work was the type customarily done by the principal or other employers similarly situated.”
We have no difficulty in concluding that the work done by Benson was a necessary or essential part of Jeff Davis’ business. Jeff Davis is an electrical cooperative organized pursuant to statute specifically for the purpose of supplying electrical energy to the public. Without electrical substations, Jeff Davis could not transform high voltages of electricity into lower voltages capable of being used by consumers. Clearly, the design of said substations constitutes an essential and necessary part of Jeff Davis’ business.
Furthermore, we feel that the record supports a finding that not only Jeff Davis, but other similarily situated electrical cooperatives customarily engage in the design and construction of electrical substations. The *1000 most compelling evidence in support of this conclusion come from the plaintiff, Jerome Benson. He clearly stated under examination that Jeff Davis itself could have undertaken this design had it chosen to do so. Furthermore, he admitted that it was possible that Seagraves could have done the design work that Barbay was doing for Seacoast. Benson also admitted that some of the other rural electrical cooperatives in the State had engineering staffs that were capable of undertaking this design work.
Seagraves corroborated this testimony by stating that not only did he possess the ability to design substations similar to the one planned for Seacoast, but that he had actually designed similar substations for Jeff Davis in the past.[3] It should be noted here that the record indicates that Sea-graves had no college diploma and lacked the specialized education and training that the engineers at Barbay possessed. On cross-examination, plaintiffs counsel attempted to discredit Seagraves’ testimony by forcing him to admit that he had received assistance from Barbay in the design work that he had done in the past. However, we do not feel that this detracts from the fact that Seagraves possessed the ability to design the Seacoast substation and that Sea-graves had done work on similar substations in the past, albeit with assistance from Bar-bay personnel. The second test cited in Moses is thus met.
Finally, Jeff Davis had clear authority to do this type of work. The charter of Jeff Davis was drafted pursuant to the provisions of La.R.S. 12:401, et seq., (supra). The design of an electrical substation is an integral part of the cooperative’s power to “... construct ... electric transmission and distribution lines or systems ... . ” (La.R.S. 12:403(8)).
Unfortunately, the jury in this case was not fully instructed as to the nature of the law concerning statutory employer status as developed in the Gray, Messer, and Duple-chin cases, which we find controlling. Had they been properly instructed we feel that any finding on their part that Jeff Davis was not the statutory employer of Jerome Benson would have been clearly erroneous.
It is therefore Ordered, Adjudged, and Decreed that the judgment of the trial court in favor of Jerome C. Benson against the named defendants be and the same is hereby reversed, and that there be judgment herein in favor of the defendants Jefferson Davis Electrical Cooperative, United States Fidelity & Guaranty Company, and Howard Warren Seagraves, ordering plaintiff’s petition against them dismissed.
All costs at trial and on appeal are assessed against plaintiff, Jerome C. Benson.
REVERSED IN PART AND RENDERED.

. This action was later dismissed on a motion for summary judgment filed by the third party defendants.

. No issue is made of the fact that the judgments together fall slightly short of the $125,-000.00 jury figure.

. Seagraves testified that he designed similar substations for the Louisiana Menhaden Company at Cameron .and the Michigan Wisconsin Pipeline Company facilities at Grand Chenier.