436 So.2d 525 (1983)
Jerome C. BENSON
v.
Howard Warren SEAGRAVES, Jefferson Davis Electrical Cooperative, Inc. and United States Fidelity and Guaranty Company.
No. 82-C-2946.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
*526 John B. Noland, Breazeale, Sachse & Wilson, Baton Rouge, for applicants.
J.B. Jones, Jr., Jones, Jones & Alexander, Cameron, for respondents.
MARCUS, Justice.
Jerome C. Benson, employee of Barbay Engineers, Inc., instituted this tort action for damages for personal injuries sustained by him while riding as a guest passenger in a truck driven by Howard Warren Seagraves, owned by Jefferson Davis Electric Cooperative, Inc. (Seagraves' employer) and insured by United States Fidelity and Guaranty Company (USF & G).[1] Made defendants were Seagraves, Jefferson Davis and USF & G. Commercial Union Insurance Company, workmen's compensation insurer of Barbay, intervened to recover compensation benefits paid to Benson.
Defendants answered generally denying the allegations of the petition and affirmatively set forth the defense of contributory *527 negligence.[2] In addition, defendants asserted the special defense of "statutory employer" claiming that Benson's work was a part of Jefferson Davis' trade, business or occupation. As such, defendants contended that Benson's exclusive remedy was workmen's compensation and thus they were not liable in tort.[3]
At trial by jury, it was stipulated that the accident was caused by the negligence of Seagraves. The jury returned a special verdict finding Benson was not the statutory employee of Jefferson Davis and had sustained damages in the amount of $125,000 as a result of the accident. The trial judge entered judgment in conformity with the jury's answers and the stipulation of the parties relative to compensation benefits paid.
Benson appealed claiming that the jury abused its discretion in awarding him only $125,000 in damages. Defendants answered the appeal claiming that Benson was the statutory employee of Jefferson Davis; therefore, judgment should have been rendered in their favor. The court of appeal, finding that the "jury was in error in holding that Jeff Davis was not the statutory employer" of Benson, reversed the judgment of the trial court in favor of Benson and dismissed his suit.[4] On application of Benson, we granted certiorari to review the correctness of that decision.[5]
The record reveals the following facts. Jefferson Davis Electric Cooperative, Inc. is one of thirteen rural electric cooperatives in Louisiana. Its purpose is to supply electrical energy and to promote and extend the use thereof. Jefferson Davis is a relatively small electric cooperative with about thirty-four employees.[6] It serves the parishes of Cameron, Calcasieu, Jefferson Davis and a small part of Allen and Vermilion. There are only two "electrical engineers" employed by Jefferson DavisJohn S. Robbins and Howard W. Seagraves. Robbins, general manager since 1947, graduated from college with a bachelor of science degree in mechanical engineering. However, even though a registered engineer, he admitted that he had not "practiced as a design engineer for many years." Rather, he acts in a managerial role which includes finances, supervision of the employees, public relations, and meetings with the board of directors. Seagraves, who has worked for Jefferson Davis since 1958, studied electrical engineering in college but never graduated. He acquired his engineering ability by experience and working under Robbins. However, Seagraves is not a licensed engineer. His basic duties and responsibilities are surveying power lines, making load checks on substations, and closing out work orders.
Primarily because of the economics of being a small electric cooperative, Jefferson Davis contracts out work to Barbay Engineers, Inc.,[7] a professional contracting firm involved in the areas of planning and designing facilities. One of the areas that Jefferson Davis contracts out is the actual designing of electrical work. Mr. Robbins stated that he leaves this type of work to professional consulting engineers but reserves the right to review it.
During the latter part of 1978, one of Jefferson Davis' customers, Seacoast Products, Inc. of Cameron, Louisiana, contacted Jefferson Davis concerning the need to increase the power capacity at its plant because of expected expansion. As a result, *528 Robbins contacted Barbay which assigned Jerome Benson, a licensed electrical engineer employed by Barbay, to the job. Benson, a college graduate with a bachelor of science degree in electrical engineering, was a specialist in substation design.[8] After surveying the existing facilities at Seacoast Products, Benson advised Jefferson Davis that it would be necessary to design a new service substation adjacent to the existing facility. Subsequently, Benson, with the approval of Jefferson Davis, proceeded with the design of a new substation. The finished design drawings were sent to Jefferson Davis. In order to discuss the need for the new facility and the financial arrangements for implementation thereof, Benson and Robbins scheduled a trip to the Seacoast facility on January 4, 1979. At the last minute, Robbins was unable to go due to another commitment. Seagraves was sent in his stead. They went in a Jefferson Davis truck driven by Seagraves. Upon arrival at the Seacoast plant, it was learned that the persons from the home office whom they were supposed to meet were not there. After getting "minimal information" from its plant engineer, they left. It was on the return trip that the truck in which they were riding hit into the rear of the tractor-trailer. Benson's injuries included a compound comminuted depressed skull fracture, fracture of the right maxilla (jawbone), ankle fracture, loss of an eye, and facial disfigurements.
The first issue presented for resolution in this litigation is whether or not Jefferson Davis was the statutory employer of Benson.
La.R.S. 23:1061 provides in pertinent part:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; ...
Under the above statute, when a principal engages a contractor to perform work which is a part of the principal's trade, business or occupation, the principal remains liable for compensation to any injured employee of the contractor. When the work performed by the contractor is part of the principal's trade, business or occupation, workmen's compensation is the exclusive remedy of the contractor's injured employee. La.R.S. 23:1032.[9] In a tort suit *529 by an injured employee of a contractor, the principal has the burden of proving that the work being performed was part of its trade, business or occupation. Lewis v. Exxon Corp., 432 So.2d 860 (La.1983).[10] This factual issue turns on the particular circumstances of each case. Lewis v. Exxon Corp., supra; Lushute v. Diesi, 354 So.2d 179 (La. 1977). If the work being performed by the contractor's employee is customarily performed by employees of the principal, it is a part of the principal's trade, business or occupation. Lewis v. Exxon Corp., supra.
In the instant case, Jefferson Davis (principal) contracted with Barbay (contractor) to perform electrical planning and design work in connection with a new service substation for one of its customers (Seacoast). Benson (employee of contractor) was injured during the performance of this work. Based on the facts of this case, we do not consider that the work performed by Benson was a part of Jefferson Davis' trade, business or occupation. Jefferson Davis, as principal, did not have any employees who customarily performed this type of work. Mr. Robbins admitted that he had not practiced as a design engineer for many years. Rather, his time was taken up in a managerial role. Mr. Seagraves, a non-licensed engineer without a college degree, testified on direct examination that during his employment at Jefferson Davis (since 1958), he had designed, by himself, two substations similar to the one proposed for Seacoast. On cross-examination, he admitted "consultation" with Barbay on the projects. During a pretrial deposition, Seagraves did not mention "engineering" when describing his duties and responsibilities. He also answered in the affirmative to the question: "Is all of the engineering work for Jeff Davis Electric Coop done by Barbay Engineers?" Benson was recalled to the stand in rebuttal. He testified that while a proposed "platform" design had been received from Jefferson Davis for one of the projects mentioned by Seagraves, the drawing had the "marks" of an engineer who had prepared it. Moreover, after being advised by Mr. Robbins that he preferred a substation design, Mike Underwood (another engineer at Barbay) and he drew up a complete new substation design which was ultimately used. As to the design of the other substation mentioned by Seagraves, Benson stated that the design work on that project was also done by Underwood and himself. Clearly, Jefferson Davis did not prove that the work being done by Benson was customarily performed by Jefferson Davis' employees. Hence, it was not a part of its trade, business or occupation. Therefore, Jefferson Davis is not the statutory employer of Benson. The court of appeal erred in holding otherwise. We must reverse.
Because the court of appeal sustained the statutory employer defense, it did not reach the issues of contributory negligence and quantum. We therefore consider it more appropriate to remand the case to that court for it to determine whether or not Benson was contributorily negligent and, if not, the adequacy of the award of damages.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
NOTES
[1] It was alleged that the accident occurred when the truck driven by Seagraves rear-ended a tractor-trailer owned by the Louisiana Department of Transportation and Development.
[2] Specifically, defendants alleged that Benson failed to maintain a proper lookout and to observe safety rules and regulations.
[3] Defendants also third-partied the Louisiana Department of Transportation and Development, owner of the tractor-trailer involved in the accident, and its insurer, Travelers Insurance Company. This action was later dismissed on a motion for summary judgment filed by the third party defendants.
[4] 421 So.2d 995 (La.App. 3d Cir.1982).
[5] 427 So.2d 1200 (La.1983).
[6] By contrast, Slemco Electric Cooperative has 200 employees, Dixie Electric Cooperative has 164 employees, and Beauregard Electric Cooperative has 90 employees.
[7] This was done pursuant to a contract between Jefferson Davis and Barbay, dated August 1, 1977, entitled "Engineering Service Contract For Consultation Services."
[8] A substation is a structure where bulk power is transformed from a high voltage to a lower one.
[9] La.R.S. 23:1032, "Exclusiveness of rights and remedies; employer's liability to prosecution under other laws," provides:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
[10] Rehearing granted June 24, 1983.