LINDSAY, Judge.
Plaintiff, Charles Teague, and plaintiff in intervention, Halliburton Services (Halliburton), appeal a summary judgment granted in favor of TXO Production Corporation (TXO) on the finding that TXO was the plaintiffs statutory employer and was therefore immune from tort liability under LSA-R.S. 23:1032 [1] and LSA-R.S. 23:1061.[2] We affirm.
TXO, a company which explores for and produces oil and gas, entered into a “turnkey” contract with co-defendant Sawyer Drilling and Service, Inc. (Sawyer) to drill the Staples, et al No. 1 Well. Sawyer, in turn, contracted with Halliburton, an independent oil field servicing entity, for the cementing of the surface casing on the well.
On January 16, 1984, Charles Teague was injured while working on the Staples well as a cementer for Halliburton. The plaintiff stepped onto a “stabbing board,” a scaffolding device, which broke causing the plaintiff to fall to the drilling rig floor. Plaintiff sustained serious injuries to his right ankle, left knee, and pelvis as a result of this accident.
The plaintiff then filed this suit on June 28,1984 to recover damages from TXO and Sawyer alleging that they were liable for having supplied the plaintiff with a defective scaffolding device and for failing to adequately maintain a safe work place. Halliburton intervened asserting its rights under Louisiana’s workers’ compensation laws to recover the medical and workers’ compensation benefits that it had paid the plaintiff.
TXO filed a motion for summary judgment alleging that the cementing job performed by the plaintiff was a necessary, essential and integral part of the drilling of the well which comprised a part of TXO’s trade, business or occupation.
The motion for summary judgment was argued and submitted to the trial court, which after considering the plaintiff’s deposition, the deposition and affidavit of Scott Pullen, the district drilling engineer for TXO, the affidavit of Norman Aeree, the district manager for Halliburton, and other memoranda filed by the parties, granted the summary judgment. The trial court concluded that TXO was correct in its assertion that it was the statutory employer of the plaintiff under the workers’ compensation laws and was thus shielded from tort liability by the operation of these statutes.
The plaintiff and Halliburton filed a motion for a Rehearing/New Trial from the final judgment signed on June 4, 1985 dismissing their claims against TXO. This *206 motion was denied and both Teague and Halliburton were granted devolutive appeals.
Sawyer also filed a motion for summary judgment. After a hearing on July 22, 1985 the trial court granted Sawyer’s motion and signed a final judgment dismissing the plaintiffs and intervenor’s claims in tort against Sawyer on July 23, 1985. This judgment is not before us on appeal.
Appealing the summary judgment in favor of TXO, the plaintiff and intervenor contend that the trial court erroneously concluded that the plaintiff was the statutory employee of TXO and that the granting of a summary judgment was therefore inappropriate. We disagree with these contentions, finding that the trial court correctly evaluated the employment relationship in this case.
As noted by the Fourth Circuit Court of Appeal in Melancon v. Tassin Amphibious Equipment Corp., 427 So.2d 932 (La.App. 4th Cir.1983), writs denied 433 So.2d 166 (La.1983) at p. 934:
Louisiana Workmen’s Compensation Law provides that the principal for whom a contractor is performing work which is part of the principal’s “trade, business or occupation,” shall be liable for workmen’s compensation benefits to the contractor’s employees. La.R.S. 23:1061.
Coincident with this responsibility of the statutory employer, the Louisiana Workmen’s Compensation Act limits the recovery of a contractor’s employee to compensation benefits. La.R.S. 23:1032. The import of these two statutes is that a statutory employer cannot be sued in tort. However, the exclusive remedy defense will not bar a tort action against the principal if it is not a statutory employer, that is, if the work performed by the contractor was not part of the defendant’s “trade, business or occupation.”
The trial court in the instant case found TXO to be a principal and statutory employer of the plaintiff under these statutes and granted TXO’s motion for summary judgment. The trial court concluded:
In reviewing the affidavits and depositions before the Court, it seems apparent that the cementing of a well is essential to the drilling of a well. It is academic that drilling of wells is essential to TXO’s business of exploring for and producing oil arid gas. It follows that the “work” being performed by the plaintiff at the time of his injury (cementing the well) was a part of the trade, business or occupation of TXO. Thus, TXO Production Corp. was the statutory employer of Charles Teague at the time of the accident, and is shielded from tort liability by the operation of La.R.S. 23:1032.
The granting of a summary judgment is appropriate when the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. Art. 966.
The plaintiff contends that there remains a disputed issue of material fact, i.e., whether the work that Halliburton performed for Sawyer, who was drilling the well for TXO, was part of TXO’s “trade, business or occupation.” However, we believe that this dispute is more properly characterized as the proper interpretation of a legal standard to be applied to the undisputed facts surrounding the accident and the plaintiff’s employment, and we conclude that the trial court’s determination of TXO’s statutory employer status was correct in light of thefollowing jurisprudence.
Of notable importance are two recent cases from the Louisiana Supreme Court denying the defendants’statutory employer status, and denying tnepi protection from tort liability under the exclusive remedy rule of the workers’ compensation statute. In Lewis v. Exxon Corp., 441 So.2d 192 (La.1983) the Supreme Court, \>n rehearing, held that Exxon was not engaged in the trade, business or occupation', of plant conversion/reconstruction at the time of the plaintiff’s accident and therefore, it was not the statutory employer of the plaintiff who was engaged in such opera *207 tions. The court stated at page 197 that two elements of the definition set forth in LSA-R.S. 23:1032 must be met in order for a principal to be considered a statutory employer and immune from tort liability.
First, the “work” must be a part of the principal’s “trade, business or occupation.” Second, the principal must have been engaged in that trade, business or occupation at the time of the injury. Absent either of these two conditions, the injury will not come within the scope of the workers’ compensation program.
The court revealed further at page 198 that:
Courts must look to the facts of each individual case to determine whether a particular activity is within the scope of a principal’s trade, business or occupation. Generally, in order for a work or project to be within a principal’s trade, business or occupation, it must be routine or customary, Benson v. Seagraves, 436 So.2d 525, 529 (La.1983); Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503, 507-08 (La.1973), or some other type of activity which is necessary for the principal’s day-to-day operations. Put another way, the works contemplated by the statute are those activities which are an actual part of the nature and purpose of the principal’s enterprise.
In Lewis, the plaintiff, an employee of H.E. Wiese, Inc., was injured while installing an “orifice run,” which was required under the conversion project which H.E. Wiese, Inc. had contracted with Exxon to perform. Although Exxon’s employees routinely installed such orifice run,s the court considered the contract for the conversion project as a whole in determining the statutory employer question. The court found that the work at issue — the conversion of Exxon’s existing plant to a different type of plant — was not a part of Exxon’s business and therefore Exxon was not the plaintiff’s statutory employer.
In the instant case, the trial court correctly noted that Lewis is factually distinguishable in several respects. The conversion project in Lewis was a one time activity for Exxon and that activity was not necessary to enable Exxon to continue in its operations for the production of oil and gas. From the information presented to the trial court here, it was determined that the work of the plaintiff was an essential part of the drilling operation, which was necessary for TXO to continue in its business of producing and exploring for oil and gas.
In Rowe v. Northwestern National Ins. Co., 471 So.2d 226 (La.1986), the Supreme Court granted writs to consider whether a summary judgment in favor of the defendant-principal, Cargill, Inc., was proper. It was the routine policy of Cargill, a worldwide agricultural company dealing with the merchandising, transportation and sale of agricultural commodities, to employ outside electrical contractors for electrical work at their bulk liquid import facility. Pursuant to this policy, Cargill entered into a contract with the plaintiff’s employer, Ace Electric Company. Subsequent to routine maintenance procedures involving the cleaning and repairing of a pump at this facility, the pump was reinstalled and the plaintiff made the necessary electrical connections between the pump and a motor. When the pump was tested and began to turn, a coupling was thrown which struck the plaintiff in the leg, causing his injury and resulting in his claim of tort liability.
A nearby grain export facility owned by Cargill maintained a staff of electricians who were capable of performing the same type of work which Cargill contracted with Ace to perform. Although these electricians had been borrowed by the bulk liquid import facility on several occasions, the work performed under those circumstances was minor and the borrowed electricians had never performed the type of work which was being performed by Rowe when he was injured.
The Supreme Court, in determining whether Cargill was the statutory employer of Rowe, again considered the two elements of LSA-R.S. 23:1032 which had been enunciated in Lewis v. Exxon, supra. The court noted that it was true that Cargill *208 had shown that the routine maintenance of the pump was a part of its trade, business or occupation, but that this fact alone was not determinative of its status as a statutory employer. The court stated at page 229:
Cargill must also show that the disconnection and reconnection of the electricity, which allowed maintenance on the pump to be performed, was also customarily performed by Cargill employees. Benson v. Seagraves, supra; Lewis v. Exxon, supra.
Examining the deposition of the regional manager for Cargill, the court noted that employees of the bulk liquid import facility did not customarily perform electrical work and that it was the custom of this facility to contract out this type of work “to those who are properly equipped to deal with high voltage electrical wires.” The court, therefore, concluded that the reconnection of electricity to the pump by the plaintiff was not part of the trade, business or occupation of Cargill. Since the plaintiff was not engaged in the trade, business or occupation of Cargill at the time of injury, Cargill was not the statutory employer of the plaintiff and the granting of the defendant’s motion for summary judgment was improper.
The plaintiff and intervenor in the case at bar place great emphasis on Rowe, supra, arguing that the facts surrounding the plaintiff’s employment relationship with TXO are even more indicative of the lack of statutory employment than that revealed by the facts in Rowe. As summary judgment was deemed inappropriate in Rowe, the plaintiff and intervenor contend that such a judgment is inappropriate in this case as well.
The plaintiff argues that neither TXO nor Sawyer have any employees who customarily perform or are trained to do surface casing cementing work. These companies also do not have any of the specialized equipment that is required for this limited task. Therefore, the plaintiff argues that since the Supreme Court in Rowe found that Cargill was not the statutory employer of the plaintiff, even though it had employees who could perform the same type of work as plaintiff, a finding of statutory employment in this case is not proper, where TXO did not even have the capacity to perform the work that was being performed by the plaintiff at the time of the accident.
We disagree, however, with the plaintiff’s analysis. It is important in this context to note the unique nature of the oil and gas industry. The business of exploring for and producing oil and gas is highly diversified but somewhat tightly unified. This was recognized in 13 W. Malone & A. Johnson, Louisiana Civil Law Treatise: Workers’ Compensation § 126 (2d ed. 1980). There the authors noted that the court’s view of LSA-R.S. 23:1061 has become more expansive over the years, especially with respect to the industry of mineral extraction. The authors state at page 254:
If the business of the principal were one whose operation normally included a wide variety of work in the development or severance of natural resources, it often could not build or install its own structures or equipment through contractors and escape compensation liability, since installations of that kind were usually done by the principal directly. This was particularly true of oil producing enterprises, which were held liable to the employees of contractors hired to haul pipe and material for the erection of oil wells, contractors engaged to weld oil production equipment, to pull casings from wells, and to fish out lost tools. This experience has continued to the present; most of the more recent cases, however, are decisions limiting a plaintiff seeking tort damages against the principal to a compensation recovery. [Footnotes omitted]
This court has also recognized that the oil and gas industry is comprised of a number of separate entities which together perform the interrelated business of oil and gas exploration and production. In Butler v. Home Insurance Company, 448 So.2d *209 801 (La.App. 2d Cir.1984), writs denied 450 So.2d 954 (La.1984), we recognized that workover operations being performed by the plaintiffs at the time they were injured, were part of the defendant-principal’s trade, business or occupation of oil production in Louisiana and Arkansas. The plaintiffs, employees of Dewey Williams Oil Well Service Company, were crew members on a workover rig which had been sent to pull and repair tubing on an oil well owned and operated by the defendant-principal. This court stated that it was evident that workover operations are an integral and necessary part of the oil production business and are routinely performed. The defendant customarily contracted out these operations to servicing companies with respect to their Louisiana wells, although it was noted that the company did have some of their own employees performing this type of work on wells in other areas.
In Jurls v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir.1984), writs denied 460 So.2d 1045 (La.1984), this court affirmed a summary judgment in favor of a drilling company, the defendant-principal, who had hired the plaintiffs employer to tear down the drilling company’s rig and transport it elsewhere. The plaintiff was injured during this procedure. We found that there was no error in the trial court’s conclusions that the plaintiff’s employer had undertaken to execute work which was part of the defendant’s business as a drilling contractor. This court explained at page 137 that:
Employees of hauling or trucking contractors that serve the oil and gas industry have been recognized consistently as statutory employees of the principal who hires the hauling contractor. See Malone-Johnson § 126, page 254, and cases there cited and discussed. Drilling contractors serve exploration companies in the oil and gas industry. Hauling contractors serve drilling contractors. The drilling contractor moves its rig to the explorer’s well site, drills to the desired depth, and then removes the rig to another location. See Malone-Johnson, cited supra. We have no difficulty concluding that plaintiff and his primary employer were performing work (removing the rig from the well site) that was a part of the nature and purpose of Lama’s drilling business, even though Lama did not own trucks and cranes to do this work.
In Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978), the Louisiana Supreme Court found that a summary judgment in favor of the defendant-principal, Sun Oil, was properly granted as Sun Oil was the injured plaintiff's statutory employer. The court noted that Sun Oil and other major oil companies performed, with their own employees, the maintenance that was being performed by the plaintiff Barnes when he was injured. The court stated that the fact that Sun Oil contracted out this work at the facility where the plaintiff was injured would not alone prevent this labor from being a part of the regular business of Sun Oil at that plant.
This proposition was also recognized in Melancon v. Tassin Amphibious Equipment Corp., supra. In that case, the Fourth Circuit Court of Appeal noted that the upgrading of a gas lift system is a part of the regular trade, business and occupation of an oil company. The court stated that the “sole fact that Texaco contracted the work to another company does not prevent the labor from being part of Texaco’s regular business. Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978).”
The plaintiff in Melancon was the employee of an equipment company whose marshbuggy had been leased to Pipelines, Inc. Pipelines had contracted with Texaco to install new pipes to upgrade Texaco’s secondary recovery system, a gas lift system in an oil field. Melancon was injured while he was operating the marshbuggy in this field. The court found that summary judgment in favor of Texaco and Pipelines was properly granted, dismissing the plaintiff’s suit in tort as these defendants were the statutory employers of the plaintiff. The court stated that the affidavits presented in support of the summary judgment revealed that a gas lift system is á *210 common and accepted practice in the oil business and that it is the usual and customary practice of Texaco to use a gas lift system in the marshy areas of Louisiana. Although it was noted that Texaco does lay some pipelines with their own personnel, it is Texaco’s practice to general contract out this operation to contractors, such as Pipelines, Inc. Another affidavit revealed that it is a common practice for oil companies to contract out the laying of pipelines for secondary gas lift systems. On the basis of this information, the court found that the work performed by the plaintiff was an integral part of Texaco’s trade, business or occupation.[3]
Similarly, in the case at bar, the fact that TXO contracted out the cementing of surface casing of its wells in Louisiana would not alone prevent this labor from being a part of TXO’s trade, business or occupation. The evidence presented to the trial court in this case on the motion for summary judgment, included information that TXO has been responsible for the drilling of over 2,000 wells in the last three years in the furtherance of its business of the exploration and production of oil and gas. In answers to interrogatories and in their response to requests for admissions of fact, TXO revealed that it owns a drilling company and that it has contracted out the drilling of approximately 1,500 wells in the last five years. Although TXO agrees that it does not have any personnel who customarily perform surface casing cementing work, TXO stated that a number of TXO employees have been owner’s representatives with respect to this type of work and that contractors have provided the equipment to perform this work. It was further revealed in both Scott Pullen’s affidavit and in the plaintiff’s deposition that state law requires that the surface casing be set and cemented on all oil and gas wells drilled in Louisiana. Scott Pullen, in his deposition, further explained that on every well drilled by TXO, the surface casing is cemented in accordance with this law. He also stated that TXO owned the casing pipe that was being cemented and set in the well by Halliburton.
This information supports the trial court’s conclusions that the work being performed by the plaintiff at the time of the accident was a part of the nature and purpose of TXO’s business enterprise.
The Third Circuit Court of Appeal has also recently dealt with the issue of statutory employment in the oil and gas industry. In Berry v. Holston Well Service, Inc., 467 So.2d 90 (La.App. 3d Cir.1985), the court stated at page 93 that:
The oil and gas exploration and production industry has historically and customarily operated in a unique manner. Because the industry is so reliant on highly technical procedures throughout the drilling process it would be impossible and in fact prohibitive for an oil company to maintain the personnel and equipment to drill, complete, or rework a well. Each and every process in the drilling and reworking of the well are inter-related, component, and vital parts of the successful business of oil production, therefore the custom of the industry has been to hire highly specialized independent contractors to perform the necessary inter-related tasks.
The defendant-principal in Berry, Sohio, was engaged in the workover of a well and had contracted with Holston Well Services, Inc. to furnish the necessary rig, equipment and personnel for the drilling portion *211 of the job. When it became necessary to perforate the well at a certain depth, Sohio contracted with CRC Western Wireline Services, Inc., the plaintiff’s employer, to perform this work and to provide the necessary labor, tools, equipment and materials. The plaintiff was injured in the course of this work. The trial court found that wire-line operations were a part of the regular trade, business or occupation of Sohio, therefore under LSA-R.S. 23:1061, Sohio was the plaintiffs statutory employer. Summary judgment was then granted to Sohio and its liability insurer, dismissing the plaintiffs suit in tort.
The Third Circuit distinguished Lewis v. Exxon, and Benson v. Seagraves, supra, stating that those cases dealt with the construction of new facilities for existing business operations. As the principals in those cases were not in the construction industry and did not have the equipment or personnel to handle the projects which the independent contractors had been hired to perform, they were not considered to be the statutory employers of the independent contractors’ employees. The court stated that considering the unique manner in which the oil industry operates, the “new construction” cases of Lewis and Benson were not controlling.
After the Third Circuit Court of Appeal affirmed the summary judgment in favor of Sohio and its liability insurer, the plaintiff applied for writs of certiorari and review to the Louisiana Supreme Court. The plaintiff’s application was granted, Berry v. Holston Well Service, Inc., 474 So.2d 1296 (La.1985) and the Louisiana Supreme Court remanded the case to the Third Circuit with instructions that the case be reconsidered in light of Rowe v. Northwestern National Ins. Co., supra.
Upon remand, in Berry v. Holston Well Service, Inc., 479 So.2d 944 (La.App. 3d Cir.1985), the Third Circuit Court of Appeal distinguished Rowe as involving routine maintenance activities at a plant. On the other hand, the Berry case involved the “complex, integrated, interdependent and interrelated operations required for the safe and efficient discovery, recovery and production of minerals.” The court stated that although it reconsidered the case in light of Rowe, it found that Rowe as well as Lewis v. Exxon and Benson v. Seagraves, supra, were distinguishable and therefore not applicable to the facts of the Berry case.
Upon granting writs of certiorari and review in Berry, the Louisiana Supreme Court was presented with the opportunity to discard the line of analysis distinguishing the oil and gas industry as unique with respect to questions involving statutory employment. This the Supreme Court declined to do. Although the remand of Berry to the Third Circuit for reconsideration in light of the Rowe decision may indicate that the Supreme Court is questioning this analysis, nevertheless, the Supreme Court is apparently not yet ready to completely eliminate the interpretation afforded LSA-R.S. 23:1061 in the area of oil and gas production.
We agree with the treatment of this issue by the Third Circuit Court of Appeal in Berry, and with the trial court’s conclusions and ruling in the instant case. It is apparent that the cementing of surface casing is an integral part of the drilling of an oil well, and such activity is essential and necessary to the drilling of wells for the production of oil and gas. Therefore, the work performed by the plaintiff was a part of TXO’s trade, business or occupation and TXO, as a statutory employer of the plaintiff, is protected from the plaintiff’s suit in tort under the exclusive remedy provision of LSA-R.S. 23:1032. Thus, the trial court’s action in granting the summary judgment in favor of TXO is affirmed, at plaintiff’s cost.
AFFIRMED.

. LSA-R.S. 23:1032 provides in pertinent part:
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal” shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

. LSA-R.S. 23:1061 provides in pertinent part:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this chapter which he would have been liable to pay if the employee had been immediately employed by him; ....

. In Holmes v. St. Charles General Hospital, 465 So.2d 117 (La.App. 4th Cir.1985), the Fourth Circuit Court of Appeal noted that both the Barnes v. Sun Oil Co. and Melancon v. Tassin Amphibious Equipment Corp. decisions, supra, predate the Louisiana Supreme Court decision in Lewis v. Exxon, supra. In Holmes, the court of appeal stated that insofar as these decisions are inconsistent with the Lewis case, they were impliedly overruled by the Supreme Court and that the test set forth in Lewis would be controlling in determining the status of a statutory employer.
However, neither Lewis nor Holmes were decided in light of circumstances involving the production and recovery of oil and gas. Barnes, Melancon, and the instant case deal with the complex oil and gas industry and these cases are distinguishable on that basis.