499 So.2d 127 (1986)
Charles TEAGUE, Plaintiff-Appellant,
Halliburton Services, Plaintiff-Appellant in Intervention,
v.
SAWYER DRILLING COMPANY, et al., Defendant-Appellee.
No. 17617-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
*128 Goff & Goff by A. Kennon Goff, III, Ruston, Joseph P. Macaluso, Jr., New Orleans, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr., and LINDSAY, JJ.
LINDSAY, Judge.
This case was originally before this court to review the granting by the trial court of a motion for summary judgment filed by the defendant, TXO Production Corporation, on grounds that the defendant was the statutory employer of the injured plaintiff, Charles Teague, and therefore immune from tort liability. In our original opinion, we sustained the trial court ruling. Teague v. Sawyer Drilling Company, 485 So.2d 204 (La.App.2d Cir.1986). The Louisiana Supreme Court, 491 So.2d 14 (La. 1986), granted writs and remanded the case to us for reconsideration in light of its recent opinion in Berry v. Holston Well Service, 488 So.2d 934 (La.1986). For the following reasons, we reverse the trial court judgment sustaining defendant's motion for summary judgment and remand the case to the trial court for further proceedings.
TXO, an oil and gas production and exploration company, entered into a "turnkey" contract with Sawyer Drilling & Service, Inc. to drill an oil well. Sawyer contracted with Halliburton, an independent oil field servicing entity, for the cementing of surface casing on the well. Plaintiff worked for Halliburton and was injured on January 16, 1984 while performing cementing work on the well. A wooden scaffolding device on which the plaintiff was standing broke, causing the plaintiff to fall to the rig floor. Plaintiff alleged that he sustained serious injuries to his right ankle, left knee and pelvis.
Plaintiff filed suit on January 28, 1984 to recover damages from TXO and Sawyer, alleging they were liable in tort because they supplied him with a defective scaffolding device and for failing to adequately maintain a safe work place. Halliburton, plaintiff's employer, intervened in this suit to assert its subrogation rights under the Louisiana Workers Compensation laws, claiming it was entitled to recover the medical and worker's compensation benefits that it had paid to plaintiff from any award that plaintiff might receive in his tort action.
TXO filed a motion for summary judgment alleging that the cementing job performed by the plaintiff was a necessary, essential, and integral part of drilling the well which comprised a part of TXO's trade, business or occupation. Therefore, TXO asserts that at the time of the accident, it was a statutory employer of the plaintiff and immune from liability in a tort suit.
The motion for summary judgment was argued and submitted to the trial court. On May 16, 1985 the trial court rendered a written opinion granting TXO's motion for summary judgment finding that the work being performed by the plaintiff at the time of his injuries was a part of TXO's trade, business or occupation. Thus, TXO was a statutory employer of the plaintiff at the time of the accident and was shielded from tort liability by the operation of LSA-R.S. 23:1032.[1]
*129 Both the plaintiff, Teague, and the plaintiff in intervention, Halliburton, filed a motion for rehearing from the final judgment signed on June 4, 1985, dismissing their claims against TXO. This motion was denied on June 10, 1985. Both Teague and Halliburton were granted devolutive appeals from the final judgment.[2]
In our opinion of February 26, 1986, we affirmed the trial court judgment granting TXO's motion for summary judgment based on a finding that TXO was the statutory employer of the plaintiff and immune from tort liability under LSA-R.S. 23:1032 and 23:1061.[3] We examined prior jurisprudence, including Lewis v. Exxon Corporation, 441 So.2d 192 (La.1983) and Rowe v. Northwestern National Insurance Company, 471 So.2d 226 (La.1985), setting forth the guidelines to be followed in determining if a statutory employment relationship existed. We distinguished Lewis and Rowe as cases involving new construction or routine maintenance. Those cases did not deal with the unique nature of the oil and gas production industry. We relied in part on cases which had indicated that work performed by an independent contractor for an oil and gas production company would create a statutory employment relationship between the production company and the injured employee of the independent contractor. Butler v. Home Insurance Company, 448 So.2d 801 (La.App.2d Cir. 1984), writ denied, 450 So.2d 954 (La. 1984); Melancon v. Tassin Amphibious Equipment Corp., 427 So.2d 932 (La.App. 4th Cir.1983), writs denied, 433 So.2d 166 (La.1983); Jurls v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir. 1984) writs denied, 460 So.2d 1045 (La.1984); Barnes v. Sun Oil Co., 362 So.2d 761 (La. 1978).
We also relied in part on the case of Berry v. Holston Well Service, Inc., 467 So.2d 90 (La.App. 3rd Cir. 1985) and the Third Circuit's subsequent consideration in Berry v. Holston Well Service, Inc., 479 So.2d 944 (La.App. 3rd Cir.1985). In those cases, the Third Circuit Court of Appeal dealt with the issue of statutory employment *130 in the oil and gas industry. In Berry, the plaintiff was employed by a wireline service which was performing work-over operations on a well and lease owned by a production company. The defendants were the production company and the drilling contractor on the oil and gas well drilling project. The defendant, drilling contractor, hired the wireline service for which plaintiff worked to do perforation work on the well. During the course of this work, the plaintiff was injured. Plaintiff sued the defendants in tort and the defendants moved for and were granted summary judgments, claiming statutory employer status. Plaintiff appealed this ruling and the Third Circuit Court of Appeal was called upon to decide whether wireline operations during the workover of an oil and gas well should be considered part of the regular trade, business or occupation of the oil company whose lease was being drilled. In its first opinion in Berry, the Third Circuit held that the defendants were the statutory employers of the plaintiff. The court reasoned that Lewis v. Exxon, supra and its predecessor, Benson v. Seagraves, 436 So.2d 525 (La.1983) were not applicable because those cases dealt with new construction whereas Berry concerned oil and gas production. The Third Circuit reasoned that the oil and gas exploration and production industry has historically and customarily operated in a unique manner. The court found that because the industry is so reliant on highly technical procedures throughout the drilling process, it would be impossible for an oil company to maintain the personnel and equipment necessary to drill, complete or rework a well. Therefore, because each process in drilling and reworking a well is interrelated and necessary to the successful business of oil production, those specialized functions performed by independent contractors create statutory employment relationships between the principal and the injured employee of the specialized independent contractors. The court reasoned that although wireline operations are specialized techniques in oilfield operations, because of the unique nature of the oil production industry, such work was a part of the production company's business and therefore the production company was the statutory employer of the plaintiff.
The Louisiana Supreme Court granted writs and rendered an order transferring the case back to the Third Circuit Court of Appeal for reconsideration of its decision in light of Rowe v. Northwestern National Insurance Company, supra. Berry v. Holston Well Service, Inc., 474 So.2d 1296 (La.1985). Upon remand, the Third Circuit affirmed its prior decision, finding that the principal and the employee of the specialized independent contractor had a statutory employment relationship. Berry v. Holston Well Service, Inc., 479 So.2d 944 (La. App. 3rd Cir.1985). The Third Circuit distinguished Rowe as involving routine maintenance activities at a plant, whereas the Berry case involved the "complex, integrated, interdependent and interrelated operations required for the safe and efficient discovery, recovery and production of minerals."
Following this latest treatment by the Third Circuit Court of Appeal, the Louisiana Supreme Court again granted writs. Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). The Louisiana Supreme Court reversed the decision of the Third Circuit Court of Appeal, refusing to find an exception for the oil and gas industry, and set forth specific guidelines for determining if a statutory employment relationship exists. The court specified that this determination involves the following three level analysis:
Basically, a determination of whether a statutory employment relationship exists involves a three level analysis. In the first level, the primary focus is on the scope of the contract work. "The specific task to which an individual employee is put should not be determinative of his coverage under the Act. Instead, the entire scope of the work contract must be considered." Lewis, supra, citing Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25 (1949). The central *131 question to be answered is whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field. If it is determined that the contract work is specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees. In this situation, "the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play" because the contractor is an independent business enterprise, rather than a mrere intermediary interposed to avoid compensation responsibility. Williams v. Shell Oil Co., 677 F.2d 506 (5th Cir.1982) (Tate, J. writing for the panel), citing 13 W. Malone & H. Johnson, La. Civil Law Treatise-Worker's Compensation, §§ 78, 126 (1980).
If it is determined that the contract work is non-specialty, then the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the princial's trade, business or occupation. The jurisprudence has forged several guidelines, in no way exhaustive, which can aid a court in resolving this factual issue:
(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage. Lewis, supra; Benson, supra; Barnes, supra; Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503 (La.1973).
(2) Does the principal have the equipment and/or manpower capable of performing the contract work? This is a sub-species of the specialty inquiry, supra. Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees. Lewis, supra, citing 1C. A. Larson, The Law of Workmen's Compensation, § 49.12, at 9-41 (1982).
(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? See Reeves, supra; Brown v. Kaiser Aluminum and Chemical Corp., 289 So.2d 524 (La.App. 1st Cir. 1973), writ not considered 293 So.2d 171 (La.1974); Malone & Johnson, supra, § 126, pp. 252-53, fn. 91.
These guidelines are not absolute or rigid, but are instead to be applied relatively, taking into consideration the size, complexity, integration (either horizontal or vertical), or the lack thereof, etc. of the principal. What may be nonrecurring to a small concern, may for an industry giant be regular. Similarly while the type of contract work may be non-specialized (i.e. manual labor), for a small concern it may well be beyond the expertise or capability of its employees. 1 A. Larson, Workmen's Compansation (sic) Occupational Injuries and Death, § 49.13 (Desk ed.1985). Basically, the factors developed by the jurisprudence strive to answer the overriding question of "whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors." Id. (emphasis added)
Lastly, the court must determine if the principal is engaged in the work at the time of the alleged accident. La.R.S. 23:1032. At this level "[i]t is irrelevant that the principal has the financial resources or expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the statute, he must be engaged in the enterprise at the time of the injury." Lewis, supra.

The Louisiana Supreme Court applied this three step analysis to find that under *132 the facts in Berry, a wireline service company is a highly specialized separate support industry of the oil business requiring a degree of training, skill, experience and equipment not normally found outside the wireline field. Therefore, wireline work is considered specialized per se and as a matter of law the defendant was not the plaintiff's statutory employer.[4]
According to the analysis set forth in Berry, we must determine if the cementing of surface casing is specialized or non-specialized. The pertinent inquiry is whether the contract work requires a degree of skill, training, experience and/or equipment not normally possessed by those outside the contract field. From the facts of this case, we conclude that this cementing operation was specialized per se. The oil production industry is dependent upon many specialized types of work of which cementing of casing is one. TXO had no employees who customarily performed such work or who possessed the skill or training required to do such work. TXO did not own or lease any equipment necessary for performing the work of cementing oil well casings. It does does not appear that a company such as TXO would ordinarily have employees or equipment required to do such work. A review of the jurisprudence dealing with the issue of statutory employment in the context of the oil and gas production industry shows that it is not uncommon for a lease holder to contract out all the work necessary for the drilling of a well, just as TXO did in the present case.
Because we find that the industry of cementing surface casing is specialized per se, no further inquiry is necessary to determine that TXO does not hold statutory employer status. However, if such an inquiry were necessary, the second and third parts of the Berry analysis would negate a finding that TXO was the plaintiff's statutory employer.
Although cementing of surface casing is required on all Louisiana oil wells, according to the materials in this record on motion for summary judgment, TXO does not have employees or equipment to perform this work nor is the maintaining of such a staff the regular practice in the oil and gas production industry. Finally, TXO was not engaged in the performance of such work at the time of plaintiff's injury.
For the above stated reasons, we reverse the trial court judgment granting TXO's motion for summary judgment and remand the case to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] LSA-R.S. 23:1032 provides:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the work "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
[2] Sawyer Drilling & Service, Inc. also filed a motion for summary judgment which was granted by the trial court. Neither the plaintiff nor the plaintiff in intervention filed a petition in the trial court to appeal this judgment and therefore that judgment is final and not before this court for review.
[3] LSA-R.S. 23:1061 provides:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
[4] Following an articulation of this three part analysis, the court reviewed prior cases dealing with the statutory employment issue and found the results of those cases to be consistent with the new analysis except for Butler v. Home Insurance Company, supra. In Butler, we held that workover operations performed by plaintiffs at the time they were injured were part of the principal's trade, business or occupation of oil and gas production. The Louisiana Supreme Court overruled Butler to the extent it is inconsistent with Berry.