465 So.2d 117 (1985)
Gwendolyn Tatum, wife of Calvin HOLMES
v.
ST. CHARLES GENERAL HOSPITAL, et al.
No. CA 2362.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
Rehearing Denied March 27, 1985.
*118 Alonzo T. Stanga, III, William R. Mustian, III, Metairie, for appellant.
Rene A. Pastorek and Roselyn B. Koretzky, Windhorst, Pastorek & Gaudry, Gretna, for appellees.
Before GULOTTA, BYRNES and CIACCIO, JJ.
CIACCIO, Judge.
Plaintiff, Gwendolyn Holmes, appeals from the judgment of the district court which granted summary judgment in favor of the defendants, St. Charles General Hospital and its insurer, National Medical Enterprises. We reverse the summary judgment and remand the case for further proceedings.
At the time of this incident, September 18, 1982, Gwendolyn Holmes was employed as a phlebotomist with Pathology Laboratory. She was working at St. Charles General Hospital. At approximately 9 p.m. on this date the plaintiff had taken blood from a patient at the hospital. She stepped out of the patient's room into the hall where she slipped on a wet surface, fell and fractured her right wrist. Plaintiff thereafter sued St. Charles General Hospital, and its insurer seeking to recover damages for her personal injury caused by the alleged negligence and strict liability of the defendant.
The defendants filed an answer wherein they denied the allegations of the plaintiff's petition and raised the affirmative defense of contributory negligence. In the alternative, the defendants alleged that plaintiff was their statutory employee and her exclusive *119 remedy was for benefits under the workmen's compensation statute. R.S. 23:1032.
St. Charles General Hospital and its insurer filed a motion for summary judgment which was granted by the district court, and the plaintiff appealed.
The sole issue on appeal is whether the trial court erred in granting the defendants' motion for summary judgment.
In the recent Louisiana Supreme Court decision of Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, et al, 427 So.2d 1152 at 1153-54 (1983), the issue of summary judgment was discussed:
The sole purpose for the motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. Miller v. East Ascension Tel. Co., 263 So.2d 360 (La.App. 1st Cir.), writs denied, 262 La. 1121, 266 So.2d 430 (1972); cf. Albatross Shipping Corp. v. Stewart, 326 F.2d 208 (5th Cir.1964); see also Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Comment, Development of Jurisprudence in Louisiana Relative to Summary Judgment since 1960, 12 Loyola L.Rev. 128 (1965-66). The summary judgment procedure in Louisiana is set out in La.C.C.P. art. 966 et seq...
La.C.C.P. art 966 provides that any party may move for a summary judgment at any time, and the mover is entitled to summary judgment in his favor "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law." Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); cf. Fed.Rule Civ.Pro. 56. The burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of trial on the merits. Thornhill v. Black, Sivalls & Bryson, 394 So.2d 1189 (La.1981); White v. Baker Manor Nursing Home, 400 So.2d 1168 (La.App. 1st Cir.), writs denied, 403 So.2d 68 (La. 1982); cf. Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co., 644 F.2d 424 (5th Cir.1981); Joplin v. Bias, 631 F.2d 1235 (5th Cir.1980).
To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977); cf. Adickes v. S.H. Kress Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
Our examination of the record indicates that the trial court erred in granting the motion for summary judgment filed by the defendants.
In its motion for summary judgment, St. Charles General Hospital and its insurer allege that they were the statutory employer of the plaintiff and her sole remedy for injury consists of compensation benefits. Affidavits were filed in support of the defendant's motion. One affidavit was executed by William Respee, the Director of the Laboratory Department at this hospital and an employer of Pathology Laboratory. He states that on the date of the accident the plaintiff was an employee of Pathology Laboratory and she worked at St. Charles General Hospital. He also states that plaintiff was acting in the course and scope of her employment when she fell and sustained injuries.
An additional affidavit was filed in support of the defendant's motion. This affidavit was executed by Thomas Reynolds, the Administrator of St. Charles General Hospital. He states in the affidavit "the provision of laboratory services is an essential integral and customary service essential to the functioning of St. Charles General *120 Hospital." He further states that "the provision of laboratory service is customarily performed by employees of the hospital but due to the particular circumstance ... and for business reasons the provision of laboratory services at St. Charles General Hospital are provided by and through contract with Pathology Laboratory." He also verified that the copy of the contract attached to his affidavit was the contract entered into by the Pathology Laboratory and this hospital. The contract sets forth the agreement of Pathology Laboratory to provide all the laboratory services and laboratory facilities for this hospital in return for certain specified financial remuneration.
In Mr. Reynolds' deposition, he testified that none of the employees of this hospital performed laboratory work and the hospital does not employ its own laboratory technicians. The sole laboratory technicians are those employed by Pathology Laboratories. Further, Mr. Reynolds testified that to his knowledge this hospital never employed any employees to perform laboratory work and this function was provided by Pathology Laboratories from the first day of this hospital's operation. Moreover, he stated that in order for the hospital to have the room to conduct laboratory work, it would have to close rooms and also secure the money and personnel for this operation.
The defendant also filed, in support of the motion for a summary judgment, an affidavit executed by Scott Gross, the Senior Vice President of the parent corporation, National Medical Enterprises, Inc. and overseer of NME Hospitals, Inc., the corporation that now owns and operates St. Charles General Hospital. In the affidavit, Mr. Gross states that NME Hospitals, Inc. contracted with Pathology Laboratories to provide laboratory services because of a lack of space for laboratory facilities at the hospital and for other business reasons. He further states that four other hospitals in the New Orleans area, that are owned by the same corporation which owns this hospital, directly employ laboratory employees, including laboratory technicians who draw blood as did the plaintiff while employed by Pathology Laboratory. However, the affidavit shows that NME Hospitals, Inc., was not the owner of St. Charles General Hospital at the time of this accident, but the actual owner was Westbank Medical Center, Ltd. ("Westbank"). NME Hospitals, Inc. did not acquire St. Charles General Hospital until June 1, 1983, approximately eight months after the accident. Accordingly, the past or present activities of NME Hospitals, Inc., in connection with its operation of several hospitals is immaterial in determining whether Westbank was a statutory employer. The affidavits do not show that Westbank ever employed any laboratory technicians in the operation of St. Charles General Hospital or that Westbank operated any additional hospitals that employed laboratory technicians at the time of plaintiff's injury. The alleged status of Westbank as a whollyowned subsidiary of National Medical Enterprises, Inc., is of no probative value. We do not look at the activities of the parent corporation in determining whether a subsidiary corporation is a statutory employer, as the parent corporation is not the employer.
The plaintiff contends that there exists genuine issues of material fact as to whether this defendant was the plaintiff's statutory employer, and we agree. Specifically, the plaintiff alleges that the work she and her employer, Pathology Laboratory, performed at the time of her accident was not part of the trade business or occupation of Westbank Medical Center, Ltd., d/b/a St. Charles General Hospital, and this Hospital was not engaged in that trade, business or occupation at the time of the accident.
When a principal engages a contractor to perform work which is a part of the principal's trade, business or occupation, the principal remains liable for compensation to any employee of the contractor who is injured. R.S. 23:1061; Benson v. Seagraves, 436 So.2d 525 (La.1983). When this is the case, the exclusive remedy of the contractor's injured employee is *121 workmen's compensation. R.S. 23:1032. This determination of whether a principal is a statutory employer is a factual issue which turns upon the facts of each case. In the case of Lewis v. Exxon, 441 So.2d 192 at 197-198 (La.1984) the Louisiana Supreme Court discussed the test to be utilized in determining whether a principal is to be considered a statutory employer:

Two elements of the Section 1032 definition must be met in order for a principal to be considered a statutory employer. First, the "work" must be a part of the principal's "trade, business or occupation." Second, the principal must have been engaged in that trade, business or occupation at the time of the injury. Absent either of these two conditions, the injury will not come within the scope of the worker's compensation program. Courts must look to the facts of each individual case to determine whether a particular activity is within the scope of a principal's trade, business or occupation, it must be routine or customary, Benson v. Seagraves, 436 So.2d 525, 529 (La. 1983); Reeves v. Louisiana & Arkansas Railway Co., 282 So.2d 503, 507-08 (La. 1973), or some other type of activity which is necessary for the principal's day-to-day operations. Put another way, the works contemplated by the statute are those activities which are an actual part of the nature and purpose of the principal's enterprise. Extraordinary or nonrecurring constructions or repairs usually are outside the scope of the trade or business of manufacturing or production concerns. See IC A. Larson, The Law of Workmen's Compensation Section 49.12, at 9-24 to 29 (1982). Only when the enterprise is accustomed to engaging in such projects as a part of its regular activities would such construction type works be covered by the statute. In addition to the regularity or predictability of the activity, it is also important to determine whether the employer normally is equipped to handle such projects, both as to manpower and equipment. Id. at 9-41.
* * * * * *
The scope of the statutory "work" also is important. The specific task to which an individual employee is put should not be determinative of his coverage under the act. Instead, the entire scope of the work contract must be considered. Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors, 10 La.L.Rev. 25, 39 (1949).
* * * * * *
It is irrelevant that the principal has the financial resources or expertise to enter into a particular trade, business or occupation. In order for any person to come within the scope of the statute, he must be engaged in the enterprise at the time of the injury. (Emphasis Supplied)
It is clear from a reading of the pleadings, affidavits and deposition that the defendants have failed to carry their burden of showing that no genuine issue of material fact exists. Defendants urge this Court to follow the decisions of Barnes v. Sun Oil, 362 So.2d 761 (La.1978) and Melacon v. Tassin Amphibious Equipment Corp., 427 So.2d 932 (La.App., 4th Cir.1983) in resolving the issue of whether they were the plaintiff's statutory employer on the date of this accident. We note that both of these decisions predate the Louisiana Supreme Court decision in Lewis v. Exxon, supra, wherein the Court set forth the tests to be followed in determining the status of a statutory employer. Thus, insofar as these decisions are inconsistent with the Lewis case supra, they were impliedly overruled by the Supreme Court, and the test set forth in Lewis v. Exxon, supra is controlling.
Although the defendants may have shown that the operation of a pathology laboratory is usually a part of the trade, business, or occupation of a hospital, they have failed to show that the work being performed by the plaintiff was customarily performed by employees of Westbank Medical Center, Ltd., at the time of the plaintiff's injury. Hence, it was not a part of Westbank's trade, business or occupation. Benson v. Seagraves, supra. Therefore, *122 in the absence of additional evidence, we find that Westbank was not the statutory employer of the plaintiff. Accordingly, summary judgment was improvidently granted.
For the reasons assigned the judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent herewith. Costs of this appeal are assessed against the appellees.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
PER CURIAM.
In our original opinion we reasoned that the affidavits of the defendant showed that St. Charles General Hospital was owned by Westbank Medical Center, Ltd. (Westbank), at the time of the plaintiff's accident. NME Hospitals, Inc. did not acquire St. Charles General Hospital until approximately eight months after the accident and accordingly, the portion of the defendant's affidavits which discussed the activities of NME Hospitals, Inc. in relation to the operation of several hospitals was immaterial in determining whether Westbank was a statutory employer. Thus, we concluded:
Although the defendants may have shown that the operation of a pathology laboratory is usually a part of the trade, business, or occupation of a hospital, they have failed to show that the work being performed by the plaintiff was customarily performed by employees of Westbank Medical Center, Ltd., at the time of the plaintiff's injury. Hence, it was not a part of Westbank's trade, business or occupation. Benson v. Seagraves, supra. Therefore, in the absence of additional evidence, we find that Westbank was not the statutory employer of the plaintiff. Accordingly, summary judgment was improvidently granted.
In this application for rehearing, defendant attempts to offer for our review a "clarifying affidavit" of F. Scott Gross, the President and Chief Executive Officer of the Hospital Group of National Medical Enterprises, Inc. and formerly the Vice President of National Medical Enterprises, Inc., containing new allegations to prove that St. Charles General Hospital was the statutory employer of plaintiff.
It is generally recognized that the Court of Appeal may not consider evidence which has not been previously introduced in the trial court. Leger v. Delano Plantation, Inc., 350 So.2d 377 (La.App., 3rd Cir., 1977).
Since defendant's affidavit was never introduced in the trial court and it did not form a part of the record on appeal it will not be considered by this Court on an application for rehearing. For the reasons assigned defendant's application for rehearing lacks merit and accordingly is denied.