569 So.2d 17 (1990)
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION
v.
Salvatore BROCATO, Yvonne Laborde, Wife of/and Eddy Rutman, Marks H. Bagalman, Rose Mary Bertrand, Wife of/and Bertrand J. Breaux, Jr., and Kathryn Cimini, Wife of/and Robert J. Fabacher, Jr.
No. 90-CA-0057.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
*18 Nathan T. Gisclair, Jr., Stephen P. Schott, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for plaintiff/appellee.
Frank G. Desalvo, New Orleans, for defendants/appellants.
Before GARRISON, BARRY and CIACCIO, JJ.
BARRY, Judge.
This appeal is from a summary judgment in favor of the Federal Savings & Loan Insurance Corporation (FSLIC) Resolution Fund as Receiver for Alliance Federal Savings & Loan Association (Alliance) on five promissory notes and a collateral mortgage executed by the eight appellants. Federal Deposit Insurance Corporation (FDIC), the Managing Agent for FSLIC Resolution Fund has been substituted as plaintiff/appellee.
Appellants entered into an agreement with Alliance to borrow money to purchase land and construct a residential condominium development. Appellants executed the following promissory notes ("Notes"):
(a) One certain hand note, dated December 23, 1983, made and subscribed by appellant, Salvatore Brocato, in the principal amount of ONE MILLION TWO HUNDRED TEN THOUSAND AND NO/100 ($1,210,000.00) DOLLARS;
(b) One certain hand note, dated December 23, 1983, made and subscribed by appellants, Yvonne Laborde, wife of/and Eddy Rutman, in the principal amount of ONE MILLION TWO HUNDRED TEN THOUSAND AND NO/100 ($1,210,000.00) DOLLARS;
(c) One certain hand note, dated December 23, 1983, made and subscribed by appellant, Marks H. Bagalman, in the principal amount of ONE MILLION ONE HUNDRED TEN THOUSAND AND NO/100 ($1,110,000.00) DOLLARS;
(d) One certain hand note, dated December 23, 1983, made and subscribed by appellants, Rose Mary Bertrand, wife of/and Bertrand J. Breaux, Jr., in the principal amount of ONE MILLION TWO HUNDRED TEN THOUSAND AND NO/100 ($1,210,000.00) DOLLARS; and
(e) One certain hand note, dated December 23, 1983, made and subscribed by appellants, Kathryn Cimini, wife of/and Robert J. Fabacher, Jr., in the principal amount of ONE MILLION ONE HUNDRED TEN THOUSAND AND NO/100 ($1,110,000.00) DOLLARS.
The Notes are secured by a collateral mortgage note dated December 23, 1983 ("Mortgage Note"), payable on demand, made and subscribed by appellants to the order of Bearer in the principal amount of $7,000,000.00 with annual interest of 17 per cent until paid. The Notes are payable to Alliance in twenty-four (24) monthly installments: twenty-three (23) interest only payments plus a final payment of all principal and accrued interest. The Mortgage Note is paraphed for identification with and secured by a collateral mortgage dated December 23, 1983 on immovable property which appellants own in Orleans Parish ("Collateral Mortgage").
*19 Appellants received approximately $5,100,000 from Alliance and substantially completed construction of the project. Funding was discontinued due to appellants' failure to make interest payments.
In August, 1985 the Federal Home Loan Bank Board appointed FSLIC as receiver for Alliance. FSLIC took possession of all assets of Alliance including the Notes and Mortgage Note. On September 23, 1985 FSLIC repudiated its obligation to fund the Notes pursuant to the Rules and Regulations for the Federal Savings and Loan System. On January 22, 1986 FSLIC filed suit on the Notes and Mortgage Note and for recognition of the Collateral Mortgage. Appellants denied liability and set forth affirmative defenses including failure of consideration, misrepresentation and breach of contract. They did not deny their signatures or dispute the validity of the Notes.
The trial court granted FSLIC's motion for summary judgment, recognized the Collateral Mortgage, and entered judgment against appellants, jointly, severally and in solido in the amount of $4,260,672.79 plus accrued interest of $1,816,637.02 through March 15, 1988 and 14 per cent interest on $4,260,672.79 from March 16, 1988 until paid. We affirm.
In reviewing a summary judgment we are required to determine whether "[t]he pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." C.C.P. Art. 966.
Summary judgment is appropriate as a matter of law if contested facts present no legal issues. Unsubstantiated allegations will not preclude summary judgment. Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App. 4th Cir.1972), writ refused 259 So.2d 914 (1972).
The trial court granted summary judgment because appellants' claims against FSLIC were unliquidated. The court noted the longstanding Louisiana rule that compensation can only take place between debts which are unliquidated and presently due. See American Bank and Trust Company in Monroe v. Carson Homes, Inc., 344 So.2d 456 (La.App. 2d Cir.1977), writ denied, 346 So.2d 221 (La.1977); C.C. Art. 1893. American Bank held that an unliquidated reconventional demand cannot defeat a motion for summary judgment based on promissory notes and mortgages.
Appellants argue that the trial court incorrectly analyzed the relationship between negotiable instrument law and compensation. Although their defenses are almost identical to the claims made by the debtors in American Bank, appellants characterize their admittedly unliquidated claims as affirmative defenses rather than reconventional demands. They argue that due to this distinction the rule forbidding the maker of a facially valid note from using unliquidated claims against the lender to defeat a motion for summary judgment is inapplicable.
Whether Louisiana law allows a debtor to defeat summary judgment based on an unliquidated claim characterized as an affirmative defense is not dispositive of this case. It is not necessary to address appellants' arguments concerning compensation and offset.
Appellants also claim that Alliance and/or FSLIC breached a contract to loan them "a sum of money not less than $5,850,000" and that material legal issues exist as to whether FSLIC had the authority to repudiate the contract. They allege that material factual issues exist in that there is a question whether Alliance refused to advance additional funds prior to FSLIC's September, 1985 repudiation of the financing agreement.
Appellants' submit a loan commitment letter from Alliance dated December 10, 1983 and accepted by them on that date. The letter states that it is the entire agreement between the parties and that there are no other oral or written agreements. Appellants' claims of breach of contract are based on incorrect assumptions concerning Alliance's contractual obligations under this agreement. The letter states:

*20 Amount: The loan shall not exceed the lesser of the following (emphasis added):
(A) $5,850,000
(B) 66 per cent of the Fair Market Value of the property to be taken as collateral at the time of funding this commitment....
Alliance made no contractual commitment to loan appellants $5,850,000 regardless of circumstances. Appellants were informed in writing at the outset that $5,850,000 was in excess of Alliance's legal loan limit and that funding the entire loan would be contingent upon Alliance's receipt of funds from other participating lending institutions. Appellants do not dispute that Alliance advanced them approximately $5,100,000.
At the time FSLIC refused to advance additional funds, a receiver of a federal savings and loan association had the power to "repudiate any lease or contract he considers burdensome." See, 12 C.F.R. §§ 548.2(k) and 549.3(a) (1985).
Appellants argue that the trial court's decision is contrary to Louisiana's negotiable instrument statutes. Louisiana distinguishes between the rights of a holder and a holder in due course of an instrument. A holder in due course takes an instrument for value, in good faith, without notice that it is overdue or has been dishonored or of any defenses against it or claims to it. La.R.S. 10:3-302(1).
La.R.S. 10:3-305 provides, in pertinent part, that one who is a holder in due course takes an instrument free from:
(1) all claims to it on the part of any persons; and
(2) all defenses of any party to the instrument with whom the holder has not dealt except ...
(b) such ... incapacity or duress or illegality of the transaction, as renders the obligation an absolute nullity; and
(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and...
(e) any other discharge of which the holder has notice when he takes the instrument.
The holder of a negotiable instrument is subject to any valid claim by any person as well as all defenses which could be asserted in an action on a simple contract and the defenses of want or failure of consideration and non-performance of any condition precedent. La.R.S. 10:3-306(a), (b), (c). Parol evidence may be admitted between parties to an instrument to prove fraud, mistake, failure of consideration, to explain ambiguities not inconsistent with the written terms or to show that the writing is only a part of an overall oral agreement between the parties. Scafidi v. Johnson, 420 So.2d 1113 (La.1982).
FDIC and FSLIC do not meet the technical requirements of a holder in due course under Louisiana law. La.R.S. 3-302(3)(c) provides that a holder does not become a holder in due course by purchasing an instrument as part of a bulk transaction not in the regular course of business of the transferor.
In D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), Reh. den. 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942), the maker of a facially valid promissory note defended the FDIC's suit for collection by alleging failure of consideration, arguing that the note had been given with the understanding that it would not be collected. The Supreme Court found a federal public policy to protect the FDIC, as regulator and insurer of the nation's financial institutions, "against misrepresentation as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." 315 U.S. at 457, 62 S.Ct. at 679. D'Oench estops debtors from defending notes based on agreements that are not apparent from the face of a banking institution's records and assets. Such "secret agreements" cannot be used to nullify the effect of an otherwise binding written obligation. 315 U.S. at 458-59, 62 S.Ct. at 679-80.
*21 Congress codified the policies enunciated in D'Oench at 12 U.S.C. § 1823(e) which reads in pertinent part:
No agreement which tends to diminish or defeat the interest of the Corporation [the FDIC] in an asset acquired by it under this section ..., either as security for a loan or by purchase or as receiver of any insured depository institution shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.
Section 1823(e) applies to the FDIC when acting in its corporate capacity.[1] Federal jurisprudence has extended the D'Oench doctrine to the FDIC when it acts as receiver of a failed bank. Beighley v. FDIC, 868 F.2d 776 (5th Cir.1989).
Regardless of whether the FDIC is a holder in due course under Louisiana law, federal common law interpreting D'Oench accords holder in due course status to the FDIC when it acquires a note in its corporate capacity through a purchase and assumption transaction with a failed financial institution. FDIC v. Wood, 758 F.2d 156 (6th Cir.1985), cert. denied 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).
In FSLIC v. Murray, 853 F.2d 1251 (5th Cir.1988) (related to the failure of Alliance), the U.S. Fifth Circuit found that although FSLIC was not a holder in due course under R.S. § 10:3-302(3)(c), due to "the sensitive federal interests implicated when FSLIC rescues an insolvent savings and loan," it should be treated as a holder in due course of notes it acquired through its purchase and assumption of Alliance's assets. 853 F.2d at 1256. Although Murray deals with FSLIC's corporate capacity, our Second Circuit relied on Murray in finding that a corporation appointed as receiver for the Federal Land Bank of Jackson was entitled to the benefits of the D'Oench doctrine in order to protect the creditors and stockholders of the failed institution. See, Grant v. Federal Land Bank of Jackson, 559 So.2d 148, 153 (La.App. 2d Cir. 1990), writs denied 563 So.2d 886 (La.1990) and 563 So.2d 887 (La.1990).
Appellants' defenses to the notes are barred regardless of whether they are asserted against FSLIC as receiver for Alliance or against the FDIC as corporate purchaser of the failed institution's assets.
The summary judgment is affirmed.
AFFIRMED.
NOTES
[1] FDIC and FSLIC act in dual capacities as receivers of failed financial institutions and as deposit insurers. As receiver of Alliance, FSLIC assumed all of that institution's assets and liabilities and marshalled its assets for the benefit of its unsecured creditors and shareholders. The Notes and other assets which could not be sold to another financial institution were purchased by the FDIC in its corporate capacity as deposit insurer.