595 So.2d 767 (1992)
Cynthia BERRY, as Natural Tutrix of her Minor Children, Kesha M. Bondi, Michael V. Bondi Jr., and Brad K. Bondi
v.
BROWN & ROOT, INC., et al.
No. 91-CA-1002.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1992.
Rehearings Denied March 18, 1992.
*769 William H. Howard, III, Raymond J. Pajares, H. Alston Johnson, III, Phelps Dunbar, New Orleans, for appellee/BP Oil Co.
James F. Holmes, Lyon H. Garrison, Christovich & Kearney, New Orleans, for appellants/Brown & Root and Alton Poche.
Thomas G. Buck, Blue, Williams & Buckley, Metairie, for intervenor-appellant.
Before SCHOTT, C.J., CIACCIO, KLEES and PLOTKIN, JJ., and GULOTTA, J. Pro Tem.
PLOTKIN, Judge.
Defendants Brown & Root, Inc., and its employee, Alton Poche, appeal a trial court judgment granting a motion for summary judgment and dismissing plaintiff Cynthia Berry's suit against co-defendant British Petroleum Oil Co. Because the record reveals unresolved genuine issues of material fact, we reverse.

Facts
Plaintiff's decedent, Michael Bondi, was killed in a vehicular collision on June 1, 1988, while in the course and scope of his employment with SECO Industries. The accident occurred at the British Petroleum Alliance Refinery in Plaquemines Parish, Louisiana, where SECO was performing electrical and instrumental services in connection with the construction of an addition to the fire station at the refinery. Bondi was killed when the industrial tricycle he was driving collided with a truck driven by Poche.
At the time of the accident, SECO was under a contract with British Petroleum to perform specialized services in accordance with several proposal requests. Pursuant to the contract, SECO supplied all labor and equipment for the project.
Bondi's heirs filed a wrongful death action against British Petroleum, Brown & Root, and Poche. British Petroleum moved for summary judgment, claiming statutory employer status, as that doctrine was interpreted by the Louisiana Supreme Court in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986).[1] Under the provisions of LSA-R.S. 23:1032, an injured employee's exclusive remedy against a statutory employer is workers' compensation benefits. Thus, the employee may not sue his statutory employer in tort.
In support of its motion for summary judgment, British Petroleum filed affidavits from the maintenance and engineering managers at all five of its refineries around the country. The following facts are established by those affidavits:
1. British Petroleum is in the business of producing and refining petroleum products.
2. British Petroleum annually "upgrades, maintains and repairs" its facilities, an endeavor which is "essential and integral to continued efficient operation."
3. British Petroleum also routinely performs construction work to improve and expand its facilities.
4. Alliance is the only British Petroleum refinery which does not maintain its own electrical instrumentation crew; the *770 other four refineries all regularly employ electricians and electrician helpers.
5. The fire house is necessary to the operation of the refinery because it provides the first line of fire protection.
In addition to the above facts, the affidavit of M.J. Tarjan, maintenance and engineering manager at Alliance, stated the following:
1. SECO's duties under the contract included "pulling electrical wire and laying conduit and minor electrical troubleshooting, repairs, installations, modifications, checks and preventative maintenance."
2. Several factors, including "economic feasibility, location of the job site, the number of hours required at the plant for such jobs, and [the company's desire] to avoid the necessity of hiring permanent employees for such jobs" influenced British Petroleum's decision to contract out the electrical work at the Alliance refinery.
3. The continued efficient and economical operation of the Alliance refinery depends on the electrical services provided by SECO.
Neither the plaintiff nor any of the co-defendants submitted any affidavits or other evidence in opposition to British Petroleum's motion for summary judgment.
In its reasons for granting British Petroleum's motion for summary judgment, the trial court stated as follows:
After reading the affidavits submitted in support of the motion for summary judgment the Court believes that a fair reading of them impels the conclusion that the work that SECO was doing for British Petroleum at the time was really non-specialized electrical work. SECO was the general electrical maintenance contractor in essence. The work that they were doing on the fire station was that type of general work. The record reflects that this type of work was normally done by British Petroleum's employees at other facilities and that they were doing such work at other refineries at other locations at the time of this accident.

Standard for Granting a Motion for Summary Judgment
The standard for reviewing a trial court decision granting a motion for summary judgment was recently summarized by this court in Federal Savings and Loan Insurance Corp. v. Brocato, 569 So.2d 17 (La.App. 4th Cir.1990), as follows:
In reviewing a summary judgment we are required to determine whether "[t]he pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." C.C.P. Art. 966.
Summary judgment is appropriate as a matter of law if contested facts present no legal issues.
Id. at 19. It follows from the above that summary judgment is inappropriate if the unresolved contested facts present legal issues.
A review of the record in the instant case reveals that the affidavits presented by British Petroleum are insufficient to resolve all the contested facts which present legal issues. Nevertheless, British Petroleum argues that it is entitled to summary judgment partially because the other parties failed to contest the conclusions in its affidavits. However, it is well settled in this circuit that the failure of a party opposing a motion for summary judgment to file counter affidavits does not automatically entitle the mover to summary judgment. Roberts v. Louisiana Coca-Cola Bottling Co., 566 So.2d 163, 166 (La.App. 4th Cir.), writ denied 571 So.2d 647 (La.1990). The summary judgment procedure is to be used cautiously, not as a "means of circumventing a trial on the merits." Id. The moving party has the burden to "affirmatively and clearly prove the absence of a genuine issue of material fact," and "doubt[s] must be resolved against summary judgment and in favor of a trial on the merits." Id. at 166-67.

*771 Statutory Employer Status Under Berry

Under the Berry decision, determination of statutory employer status depends on the following three-part inquiry:
1. Was the contract work specialized?
2. Was the contract work a part of the principal's trade, business, or occupation?
3. Was the principal engaged in the work at the time of the alleged accident?
488 So.2d at 937-38; Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226 (La.App. 4th Cir.1991).

Was the Contract Work Specialized?
Under the Berry analysis, a principal does not qualify as a statutory employer if the answer to the first question is "yes." Id., at 1231. If the contract work is specialized, it automatically falls outside the scope of the principal's trade, business, or occupation. Id. Thus, the party asserting the statutory employer defense has the burden of proving that the contract work is not specialized in order to be entitled to the benefit of the defense. Id.
The Berry opinion contains the following guidelines for determining whether the contract work is specialized:
In the first level, the primary focus is on the scope of the contract work. "The specific task to which an individual employee is put should not be determinative of his coverage under the Act. Instead, the entire scope of the work contract must be considered." The central question to be answered is whether the contract work is specialized or non-specialized. This of course is a question of fact, and courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field.
488 So.2d at 938. (Citations omitted.)
After reading the affidavits submitted in support of the motion for summary judgment, we find a genuine issue of material fact concerning whether the contract work at issue in the instant case was in fact specialized. The contract at issue is not included in the record on appeal. Thus, it is impossible for the court to review the pertinent provisions of the actual contract at issue to determine whether the work was specialized or non-specialized.
British Petroleum bases its contention that the work was not specialized on two things: (1) statements in the affidavits that the work was a routine part of British Petroleum's operations, and (2) a series of cases holding that activities such as pipefitting, general plant maintenance, welding, sandblasting, and electrical repair were not specialized.
British Petroleum's arguments are fallacious for two reasons. First, the statements in the affidavit are conclusory and thus are insufficient proof for purposes of a motion for summary judgment. Thompson v. South Central Bell Telephone Co., 411 So.2d 26, 28 (La.1982), Decatur-St. Louis Combined Equity Properties, Inc. Venture v. Abercrombie, 463 So.2d 729, 732 (La.App. 4th Cir.1985). They merely conclude that the contract work was "routine," ergo, non-specialized, without presenting any facts to support that conclusion.
Second, British Petroleum's arguments ignore the explicit statements in the Berry decision that determination of whether a contract is specialized depends on a case-by-case factual inquiry. The fact that previous courts have found other contracts calling for similarly labelled work "non-specialized" has no bearing on whether the contract at issue here is specialized or non-specialized. The Berry analysis requires a specific determination of whether the work at issue in the individual case "requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field." 488 So.2d at 938. Determination of that fact is impossible under the record as it stands; more information, in the form of the contract itself or testimony concerning the work involved in the contract, is necessary. Thus, the trial judge improperly granted the motion for summary judgment.

*772 Was the Contract Work a Part of the Principal's Trade, Business, or Occupation?

The Supreme Court articulated three guidelines for determining the second level of the Berry analysis: (1) Is the contract work routine and customary? (2) Does the principal have the equipment and/or manpower capable of performing the contract work? and (3) What is the practice in the industry relative to the contract work? Id. (Emphasis in the original.)
On the first guideline, the affidavits in the instant case contain the conclusory assertion that the work performed by SECO under the contract was indeed routine and customary. However, as stated in the previous section, those conclusory statements are insufficient to support the granting of a motion for summary judgment. On the second guideline, the record is clear that British Petroleum does not have the equipment and/or manpower capable of performing the electrical contract work at the Alliance plant, although it may possess the necessary equipment and manpower at the other four plants around the country.[2] Additionally, nothing in the affidavits establishes that the electrical workers employed at the other British Petroleum refinery plants were capable of performing the exact work being performed by SECO at the Alliance refinery on June 1, 1988. On the third inquiry, the record is absolutely devoid of any evidence of the industry practice. Thus, genuine issues of material fact remain concerning the second level of the Berry inquiry remain. Therefore, the case is not ripe for summary judgment.

Was the Principal Engaged in the Work at the Time of the Alleged Accident?
British Petroleum argues because the company employs electricians and electricians' helpers at the other four plants around the country, the answer to the third Berry inquiry is "yes." The appellant states in brief that the "Berry analysis is not limited to the principal's activities at the specific plant where the accident occurred" because the "`principal' is the entire business concernnot merely the plant where the accident occurred." Therefore, British Petroleum contends, "consideration of the work performed at other plants owned by the principal is proper." In support of this position, British Petroleum cites two federal fifth circuit court of appeals casesMozeke v. International Paper Co., 856 F.2d 722, 726-28 (5th Cir.1988) and Forno v. Gulf Oil Corp., 699 F.2d 795, 797 (5th Cir.1983)and a Louisiana third circuit court of appeals case which followed the federal fifth circuit casesSolomon v. United Parcel Service, Inc., 539 So.2d 715, 717-18 (La.App. 3d Cir.), writ denied 541 So.2d 839 (La.1989).
A close reading of those cases reveals that British Petroleum mischaracterizes their holdings. In Solomon, the third circuit cites Mozeke and Forno in support of its conclusion that "the fact that one of a company's many facilities decides to contract with independent contractors does not change the work's characterization as part of the principal's trade, business or occupation." 539 So.2d 715. That statement cannot be used to support the appellant's contention that consideration of all the plants owned by the principal is always proper to determine whether the principal is a statutory employer.
Additionally, Solomon is factually distinguishable because it deals with a company which has several different plants within the state of Louisianaonly one of which contracts out the relevant work. In the instant case, British Petroleum has only one plant in Louisiana, the Alliance plant; British Petroleum has no other plants within this state where employees actually perform the contract work. Thus, the Solomon decision does not apply under the circumstances of the instant case.
The exact issue presented by this case has never been decided by this court. *773 However, in Holmes v. St. Charles General Hospital, 465 So.2d 117 (La.App. 4th Cir.1985), this court stated that it is inappropriate to "look at the activities of the parent corporation in determining whether a subsidiary corporation is a statutory employer, as the parent corporation is not the employer." Id. at 120. Thus, under the law as it stands in this circuit, consideration of British Petroleum's four plants located in other states in determining whether British Petroleum was actually engaged in the contract work at the time of Bondi's accident is improper. Since the record is clear that the Alliance plant was not engaged in electrical contract work at the time of the accident, the answer to the third Berry inquiry is "no." Thus, the trial court judgment granting the motion for summary judgment must be reversed.
Additionally, even if the other plants were considered, the affidavits submitted by British Petroleum would still be insufficient proof on this issue. Although the affidavits list all the construction projects undertaken to improve and expand facilities at the five British Petroleum plants since 1980, none of the affidavits states that any employee in any plant was engaged in that type of work when the accident in question occurred on June 1, 1988. For this reason also, the trial court judgment was improper.

Conclusion
For the above and foregoing reasons, the trial court judgment granting British Petroleum's motion for summary judgment is reversed. The case is remanded for further proceedings.
REVERSED AND REMANDED.
SCHOTT, Chief Judge, dissenting:
The affidavit of the British Petroleum (BP) manager of maintenance and engineering establishes that BP contracted with SECO to perform electric instrumentation construction services which consisted of six kinds of work. Managers of BP refineries around the country in affidavits stated that their personnel routinely performed the identical kinds of work. From these uncontradicted affidavits there is no issue of material fact that the work contracted out to SECO was not specialized work as it was in Berry where the very nature of the wireline service being performed by CRC for Sohio was highly specialized. 488 So.2d at 935. I do not subscribe to the view that the actual contract between SECO and BP is needed to resolve this issue.
The main problem with this case stems from the fact that the kinds of electrical services provided under this contract are routinely handled by BP employees in all their refineries except the Alliance refinery. While the Solomon case is factually distinguishable as my colleagues point out, I submit that the case does lend some support to BP's position. The Holmes case is likewise distinguishable because there the question was whether to consider the activities of a parent corporation in deciding whether a subsidiary was the statutory employer of the plaintiff.
As stated in Berry and in numerous other cases the purpose of the statutory employer provisions in the worker's compensation law was to prevent principals from evading their compensation responsibilities by interposing a "straw man" between them and the injured employee. If BP hired some irresponsible contractor who could not respond to a claim for compensation by an injured employee we would liberally construe coverage for compensation purposes and find BP was the statutory employer by virtue of the fact that they have the capacity and ability to perform the work they contracted with the irresponsible contractor to do. Logic and consistency demand the same result in the present case.
I would affirm the judgment of the trial court.
NOTES
[1] Although the Berry decision was legislatively overruled effective January 1, 1990, the parties stipulated that it applies to the instant case.
[2] The issue of whether the principal's possession of the necessary equipment and manpower at the other four plants may be considered in deciding whether the principal is a statutory employer is discussed as part of the third Berry inquiry.